DOROTHY GRAMM, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 43014.) — GIBSON, P. J.

Gibson, P. J., Aulisi and Staley, Jr., JJ., concur in memorandum by Gibson, P. J. Herlihy and Reynolds, JJ., dissent and vote to reverse and dismiss in the following memorandum by Reynolds, J. The plaintiff has failed to sustain her burden of proof as to the negligence of the State, and has not established a prima facie case. No dangerous condition has been shown. No actionable negligence has been established. There is no proof as to the cause of the plaintiff's fall. The State is not an insurer of the safety of those persons using the stairway of the leased premises, but its duty is limited to the keeping of the stairway in a reasonably safe condition for persons lawfully using it. Further, reversible and prejudicial error was committed by the Court of Claims in admitting proof of nonsimilar accidents and using them as proof of a dangerous condition and notice. The trouble with the case stems from the fact that respondent's counsel, unable to show any one act which constituted negligence on

the part of the State, resorted to and levelled a "shotgun" indictment combining several accusations of a nonnegligent nature in the hopes that they would persuade the trier of the facts, considering them together, to find that in the aggregate they constituted negligence. Respondent was successful, despite the fact that some of the allegations were not even proven, in convincing the Court of Claims, and the majority of this court has placed their stamp of approval thereon. The scatter-gun indictment is that the steps were worn, wet and littered. Taking them up in order. (1) The Court of Claims has found that the "worn" portion of the steps was described as a slight slope as caused by the many people using the steps", and that the fact that a step may be worn is not enough upon which to find negligence (*Nazaroff* v. *Belam Realty Corp.*, 19 Misc 2d 65, affd. 4 A D 2d 886; *Laun* v. *Karl*, 278 N. Y. 506). A mere resort to the photographic exhibits will show that only certain steps were slightly worn, and that the stairway itself guarded by railings on the side and in the center was constructed in a very careful and proper manner. (2) It is quite clear that the evidence that a stairway is wet will not be sufficient to establish a dangerous condition, even with a slight depression (*Miller* v. *Gimbel Bros.*, 262 N. Y. 107; *Antenen* v. *New York Tel. Co.*, 271 N. Y. 558; *Feigenbaum* v. *City of New York*, 271 App. Div. 787; *Spaulding* v. *Christakos*, 269 App. Div. 909, affd. 295 N. Y. 973; *Dolan* v. *Hotel Campbell*, 260 App. Div. 872; *Freedman* v. *Clinton Ct. Corp.*, 279 N. Y. 736, revg. 254 App. Div. 643 and 167 Misc. 801; *Donohue* v. *Great Atlantic & Pacific Tea Co.*, 277 App. Div. 739). The owner or occupier of premises open to large numbers of people cannot be expected to prevent the presence of some water on the floor or stairways during the course of a rainy or snowy day. (3) The question of litter on the stairs at the time of the accident has been grossly exaggerated by this unfortunate respondent and two of her lady friends, but it is not even material in this case because on cross-examination respondent stated that over the entire stairway there were only two or three cigarette butts and two or three cellophane wrappers from cigarette packages, none of which were claimed to be in the area in which she fell. One would expect this amount of litter on the million-dollar staircase in the State Capitol. The only disinterested testimony in the case was from a policeman called there immediately after the accident who testified that the stairway was dry with no litter and some steps slightly worn in the center. The Court of Claims found: (a) that the claimant testified that the steps were in the same condition at the time of the accident and when the police officer arrived after her accident; (b) that the claimant offered no proof on which steps the cigarette butts and cellophane wrappings were lying; (c) that the claimant did not establish that there was a cigarette butt or any refuse on the step from which she fell. In *Puccio* v. *Metropolitan Jockey Club* (290 N. Y. 565) the Court of Appeals stated: " 'The record contains no evidence that the plaintiff slipped upon any of the litter which is claimed to have been upon the stairs of the grandstand where he fell. There is no reason to assume, therefore, that the plaintiff's fall was caused by any negligence of the defendant rather than by the moist condition of the stairs for which the defendant was not responsible.' " Despite the above statements of the actual evidence in the case and the findings of the Court of Claims, we find the majority adopting in substance a finding of the Court of Claims obviously contradictory and carelessly found that the steps were "worn, wet, dirty and littered with cigarette butts and paper wrappings" (again the reckless "shotgun" claim of respondent's attorney, and, of course, with no connection to the area of the fall). The regulations of the State

Labor Department are of no significance here because they merely state duties which are general to all landlords or tenants in possession under the law of negligence and do not make the State an insurer. Toward the end of the majority opinion there is a discussion of proximate cause which, in effect, says that it makes no difference what the condition was in the area where respondent fell as long as a general condition is found elsewhere on the stairway which might have caused respondent to fall. This is buttressed by an obscure quotation from Prosser which has nothing to do with this case. There are two other facets of the case which must be discussed, one of which is understandably not treated in the majority opinion. That is the reversible and prejudicial error of the Court of Claims in admitting proof of nonsimilar accidents and using them as proof of a dangerous condition and notice; this despite the fact that there were only four or five trivial nonsimilar accidents on this stairway traversed by over twelve thousand people a week (*Kaplan* v. *City of New York*, 10 A D 2d 319; cf., *Quinlan* v. *City of Utica*, 11 Hun 217, affd. 74 N. Y. 603). Prior accidents are not admissible to show either the existence of a dangerous condition or notice thereof unless it is established that the circumstances of the earlier accidents were substantially similar to those involved in the matter on trial. (See, also, Richardson, Evidence [9th ed.], § 201.) Here the only relevant purpose for which the prior accidents could have been offered would have been to establish that these stairs if wet and littered created a dangerous condition and that the State had notice of this fact. Of obvious importance, therefore, would be the question of whether the stairs were wet and littered at the time of the prior falls. If they were not then the fact that the falls occurred can have no relationship whatsoever to the question of whether the allegedly wet littered stairs involved here were dangerous or to the fact that the State was on notice of this danger. The attorney for the plaintiff stated that the reports of the prior accidents were offered " Only as to that part of it which states that it happened on the stairway, the same stairway coming down part of the appurtenance, not the remarks as to whether it was clean or the hearsay comments; only as to the fact that it happened per se, nothing more." Three of the five reports, furthermore, indicated that the steps were clear at the time of these accidents. These reports were of no probative value on the question of whether these stairs, when wet and littered, were dangerous. And this being the case they were obviously of no probative value on the issue of notice. They should not have been admitted, and to do so constituted reversible error. Respondent's counsel claimed that the cleaning of the steps after the office closed at night was insufficient. Would he have someone elbowing between the people on this busy stairway all day with a " silent butler " in his hand? Or was the State doing the only practical usual and sensible thing that all building owners and lessees do, that is, clean after the office is closed? Moreover, the evidence of the existing condition would not indicate that any thing more was necessary. The case of *Ingersoll* v. *Liberty Bank of Buffalo* (278 N. Y. 1) cited by the majority has nothing whatever to do with this case. In *Ingersoll* there was a broken step which was not repaired but merely nailed back on and collapsed when decedent descended the stairs. Notice of the condition was not disputed and unlike the present case there was clearly a defective step, which was broken after the fall. Finally, the majority places some emphasis on an inter-office memorandum written some 10 months before the accident herein, with reference to a proposed renewal of the lease which calls attention to the fact that " A number of the present terrazzo steps have worn, leading to potential accidents, especially when wet." We cannot

agree with the majority's construction that this constituted an admission that a dangerous condition existed upon which liability could be predicated. Moreover this report is in no way connected to the accident in question. It was for the sole purpose of having the premises in a good condition before signing another long-term lease. There is no proof that the step on which the claimant fell is one of those covered by the report, nor is there any proof as to what action, if any, was taken as a result of the report. The judgment of the Court of Claims should be reversed and the claim dismissed.