(December 11, 2003)

■ ENISA ZANKI et al., Appellants, v GERALD K. CAHILL et al., Defendants, and CUSHMAN & WAKEFIELD, INC., Defendant and

Third-Party Plaintiff-Respondent. CALIFORNIA JKC PROPERTIES, INC., Third-Party Defendant-Respondent, et al., Third-Party Defendants. [768 NYS2d 471]—

Order, Supreme Court, New York County (Edward Lehner, J.), entered on or about January 10, 2002, which granted a motion and cross motion for summary judgment dismissing the complaint, all cross claims, and the third-party complaint, affirmed, without costs.

Plaintiff, seeking damages primarily for alleged psychological injuries, claims that she slipped while walking down a stairwell and fell down five or six steps to the landing. Plaintiff admits that she did not see what caused her to slip. She answered "no" when asked at her deposition whether she saw "anything on the stairs" either before or after her accident, and she further answered "no" when asked whether she had seen "any debris or liquids or anything in the stairwell before [she] began to descend the stairs." Upon landing at the bottom of the stairs, however, plaintiff claims to have noticed that the sleeve at her right elbow, which she had struck during her fall, was wet. Plaintiff also alleges that there was a recurrent dangerous condition of spilled food, drink and ice on the stairwell, in that workers were accustomed to using the stairwell to bring food and drinks from a cafeteria back to their offices. Presented with the foregoing evidence, the IAS court granted defendants summary judgment dismissing the complaint. We now affirm.

In this case, even if it is assumed that plaintiff has sufficiently alleged that defendants had notice of a recurring, and routinely unaddressed, dangerous condition of spillage on the stairwell, she has not alleged any facts from which it may be inferred that the alleged recurring condition even existed at the time she slipped and fell, much less that such condition proximately caused her mishap. That is to say, we are not presented with any evidence that spilled substances were present at the time of the incident anywhere on the stairwell. Critically, plaintiff did not testify that she saw spillage anywhere on the stairwell either immediately before or immediately after her accident, nor was any other substantial evidence of the existence of such a condition presented in opposition to the motion (cf. *Sweeney v D & J Vending*, 291 AD2d 443 [2002] [area of accident was seen

being mopped after accident]; *Welch v Riverbay Corp.*, 273 AD2d 66 [2000] [evidence was presented that "stairwell was icy or wet," which defendants did not directly dispute]; *Ramos v New York City Hous. Auth.*, 249 AD2d 59 [1998] [defendant did not except to recurring condition charge]; *O'Connor-Miele v Barhite & Holzinger*, 234 AD2d 106, 107 [1996] [plaintiff testified to "accumulation of debris" on stairwell, "particularly of soap powder"]; *Vitanza v Growth Realties*, 91 AD2d 917 [1983] [in wrongful death action, evidence was presented that stairway "was seriously and pervasively defective"]; *Kelsey v Port Auth.*, 52 AD2d 801, 801 [1976] [plaintiff "testified that she saw cigarette butts, paper cups and wetness" on stairway]; *Gramm v State of New York*, 28 AD2d 787, 787 [1967], *affd* 21 NY2d 1025 [1968] [claimant and other witnesses testified that steps "were worn, wet, dirty and littered"]).

The sole basis this plaintiff offers for the inference that a dangerous condition existed on the stairwell at the relevant time is her testimony that her sleeve (not any part of the stairwell itself) was wet at the right elbow at the end of her fall. Evidence of wetness on plaintiff's sleeve—wetness that could be ascribed to causes other than contact with spillage on the stairwell—simply does not, in isolation, suffice to support a reasonable inference that "the injury was sustained wholly or in part by a cause for which the defendant was responsible" (*Bernstein v City of New York*, 69 NY2d 1020, 1022 [1987], quoting *Digelormo v Weil*, 260 NY 192, 200 [1932]). Stated otherwise, plaintiff offers nothing more than "speculation or guesswork" (*Bernstein*, 69 NY2d at 1021) to support her contention that the alleged recurring condition existed on the stairwell at the time of her accident, and also caused her accident. Accordingly, defendant's motion for summary judgment was properly granted. Concur—Andrias, Sullivan and Friedman, JJ.

Buckley, P.J. and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: Plaintiff alleges that she was injured when she fell down a stairway from the third floor of the building in which she worked to the second-floor cafeteria run by her employer. She testified that she did not see what caused her to slip on the top step but that after she landed at the bottom of the stairs her sleeve was wet at the elbow. There was evidence that employees in the building carried food and drinks in the stairwell, that there were frequent spillages on the stairs and that defendant Cushman & Wakefield was aware of this.

Plaintiff's testimony as to what she observed after her fall, coupled with the testimony of defendant's employee that he knew that food and drink were dropped on the stairs, provided

sufficient circumstantial evidence to raise an issue of fact as to whether her fall was caused by liquid that had been spilled by someone carrying food or drink on the stairs (*see Sweeney v D & J Vending*, 291 AD2d 443 [2002]) and an issue of fact as to whether defendant had constructive notice of an ongoing and recurring dangerous condition on the stairs that was routinely left unaddressed (*see O'Connor-Miele v Barhite & Holzinger*, 234 AD2d 106 [1996]).

That plaintiff could not specify that she slipped on the same step on which she struck her elbow is not fatal to her claim. In *Gramm v State of New York* (28 AD2d 787 [1967], *affd* 21 NY2d 1025 [1968]), there was evidence that the staircase on which the plaintiff slipped was "worn, wet, dirty and littered with cigarette butts and paper wrappings" (at 787) and that this was a recurring condition of which the defendant was aware. The plaintiff offered no proof that any of those conditions existed on the particular step on which she fell. Nevertheless, this Court, affirmed by the Court of Appeals, held that "the dangerous condition of the stairway and the fact of [the plaintiff's] fall thereon establish[ed] the natural and reasonable inference of the proximate cause" (at 788 [citation and internal quotation marks omitted]). Similarly, in *Kelsey v Port Auth. of N.Y. & N.J.* (52 AD2d 801 [1976]), the plaintiff saw cigarette butts, paper cups and wetness on two steps of a stairway the first time she descended and, on her second descent 15 or 20 minutes later, stepped on something that slipped, causing her to fall. This Court stated that despite plaintiff's inability to specify the precise condition that caused her fall the jury could reasonably infer that the condition that existed when she first descended the stairway remained unchanged for 15 to 20 minutes and was the proximate cause of the fall. The Court of Appeals reiterated its approval of the holdings in *Gramm* and *Kelsey* in *Gordon v American Museum of Natural History* (67 NY2d 836, 838 [1986]), where it explained that the plaintiff in each of those cases presented a prima facie case of proximate cause "because a fall was a natural and probable consequence of the conditions present on the stairs."

In *Welch v Riverbay Corp.* (273 AD2d 66 [2000]), the plaintiff claimed that his slip and fall in his office building's stairwell was caused by a recurring dangerous condition of ice that had formed as a result of a leak, rather than snow that had been tracked in. Although he had little recollection of his fall and its immediate aftermath, this Court held that the very fact that the plaintiff fell was sufficient to permit the inference that the alleged recurring condition was the cause. In *Vitanza v Growth*

*Realties* (91 AD2d 917 [1983]), this Court held that the condition of a stairway on which there were loose metal edges on 10 out of 19 steps, some steps were curved and some had nails sticking out of them, constituted sufficient circumstantial evidence to raise an issue of fact as to whether the defective condition caused the decedent's fall, even though the only witness to the accident was unable to identify the step from which the decedent fell. In *Ramos v New York City Hous. Auth.* (249 AD2d 59 [1998]), this Court held that, given the evidence that the stairwell in which the plaintiff fell was used as a "hang out" and regularly became cluttered with debris and soiled with vomit and human waste between scheduled cleanings, the jury was entitled to conclude that the plaintiff's fall was caused by a recurrent hazard routinely left unremedied by the defendant.

Based on the foregoing authorities, I would reverse the court's order and deny defendants' motion for summary judgment.